IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

CHRISTINE ABBOTT,                              *

      Plaintiff,                           *

v.                                             *          Civil Action No. RDB-13-3530

CITY OF BALTIMORE, MARYLAND, et al.,  *

      Defendants.                          *

**MEMORANDUM OF LAW IN SUPPORT OF THE MAYOR AND CITY
COUNCIL OF BALTIMORE'S MOTION TO DISMISS THE COMPLAINT**

Defendant the Mayor and City Council of Baltimore,[1] a Maryland municipal corporation, (the "City") by its undersigned counsel pursuant to Fed. R. Civ. P. 12(b)(6) submits this memorandum of law in support of its motion to dismiss the complaint for failure to state a claim on which relief may be granted.

**INTRODUCTION**

The Plaintiff Christine Abbott (the "Plaintiff") files a 10 count complaint against the City and Baltimore Police Department Officers L. Grishkot and T. Edick ("the Officers") arising from the Plaintiff's arrest on June 2, 2012. **Complaint ¶ 8.** The complaint asserts federal constitutional claims against the Officers pursuant to 42 U.S.C. §1983 in counts I, II, IV and VIII; a claim for violations of Articles 24 and 26 of the Maryland Declaration of Rights against the Officers in count X and state law intentional tort claims against the Officers in counts III, V, VI and IX.

---

[1] "The inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore.'" BALTIMORE CITY CHARTER ART. I, § 1.

1

The Plaintiff's federal constitutional claim in Count VII, which asserts that the City failed to train and supervise the Officers adequately, fails to state a claim on which relief may be granted. **Compl. ¶¶ 86-91.**

## ARGUMENT

### I.   COUNT VII OF THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE CITY.

#### A.   The City is not a final policymaker for the Officers' training and supervision.

##### 1.   THE OFFICERS ARE NOT CITY EMPLOYEES.

Count VII of the complaint, which alleges deficiencies in the training and supervising of the Officers, does not allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). The complaint fails to allege sufficient facts that the City itself "developed and maintained ordinances, policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons within the geographic and jurisdictional limits of the City of Baltimore, which caused violations of Plaintiff's constitutional rights." **Compl. ¶87;** *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (A municipality may be liable under § 1983 only if "the municipality itself causes the constitutional violation.").

The complaint relies on the false conclusion that the City "was the employer of all Individual Defendants and as such has responsibility for hiring, training, disciplining and retention of police officers employed by the City." **Compl. ¶** 7; *See Iqbal*, 556 U.S. at 678 (A court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). "The employees of the BPD [Baltimore Police Department] are not employees of the City." *Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 648 (D. Md. 2012); *See Brown v. Baltimore Police Dep't*, 2011 U.S. Dist. LEXIS 147219, at *14, 2011 WL 6415366, at *6 (dismissing § 1983 claims against City because BPD officers are not City employees and the City does not exercise control over BPD or its employees); *see also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549-50 (D. Md. 2003) ("Baltimore City, as an entity distinct from the Baltimore Police Department under Maryland law, cannot be liable for the actions of an employee of the Baltimore Police Department [under § 1983].")). The City is not liable for the Officers' actions under *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (requiring that violation of constitutional rights be caused by a policy, custom, or practice of the city).

## 2. THE BALTIMORE POLICE DEPARTMENT IS NOT A CITY AGENCY.

Under Maryland law, the BPD is an agency of the State of Maryland, not an agency of the City of Baltimore. *See* MD. CODE OF PUBL. LOC. LAWS ART. 4, § 16-2(a) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland.") (CODE OF PUB. LOC. LAWS OF BALTIMORE CITY); *see also Little v. Estes*, 2013 U.S. Dist. LEXIS 158053, *4 n. 2 (D.

3

Md. Nov. 5, 2013) ("The Police Department of Baltimore City is considered to be an agency of the State of Maryland, and not a municipal agency."); *Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 26 (2008) ("The decisions of this Court concerning the liability of the City of Baltimore for the acts, activity and inaction of the Police Department, over which it has no power, have been consistent and unequivocal, premised on, and holding uniformly, that the Baltimore Police Department is an entity of the State, and not of the City of Baltimore."). By Chapter 367 of the 1867 Laws of Maryland, the General Assembly made the BPD a State agency and its officers, State officers.

### 3.   THE CITY LACKS FINAL POLICYMAKING AUTHORITY OVER THE BPD FOR TRAINING AND SUPERVISION.

Under Maryland law, the City lacks final policymaking authority in the training and supervising of the Officers in "various aspects of law enforcement procedure." **Compl. ¶88**. Whether the City is a final policymaker for the BPD's training and supervision policies "is dependent on an analysis of state law." *McMillian v. Monroe County*, 520 U.S. 781, 786, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997); *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737,109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) ("whether a particular official has 'final policymaking authority' is a question of state law.").

"[T]he Baltimore City Charter, by which the powers, structure, and functions of the City government are defined, makes no mention of the BCPD, a police department, or any police force." *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 312 (2001). In fact, the City lacks law enforcement power. *See Baltimore v. Silver*, 263 Md. 439, 449 (1971) ("the City has no power with regard to the enforcement of the law"); *Adams v.*

4

*Baltimore Transit Co.*, 203 Md. 295, 311 (1953) (City is deprived of the power of enforcing its ordinances); *Sinclair v. Mayor & City Council of Baltimore*, 59 Md. 592, 597 (1883) ("the enforcement of the regulation is entirely dependent upon a separate and independent police department, over which the city has no control").

The Plaintiff "has failed to make plausible allegations to allow a reasonable inference that *Monell*-type liability is imputable to the City Defendants." *Bradley*, 887 F. Supp. 2d at 647. The complaint's allegation that "the City has responsibility for" the Officers' "hiring, training, disciplining and retention" is an incorrect legal conclusion couched as a factual allegation. **Compl. ¶ 7**; *See Twombly*, 550 U.S. at 570 (stating that "courts are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("we are not bound to accept as true a legal conclusion couched as a factual allegation"); *see e.g. Muhammed v. Bernstein*, 2013 U.S. Dist. LEXIS 87628, *17 n. 3 (D. Md. June 21, 2013) ("The Baltimore Police Department is a state agency and the Mayor does not hire, train, manage, or oversee its officers.").

The City is prohibited from exercising any authority that could "conflict, impede, obstruct, hinder, or interfere with the powers of the Police Commissioner." BALTIMORE CITY CHARTER ART. II, §27 ("[N]o ordinance of the City or act of any municipal officer...shall conflict, impede, obstruct, hinder, or interfere with the powers of the Police Commissioner."). The City's Charter is "the law of said City...subject only to the Constitution and Public General Laws of this State..." Md. Const. Art. XI-A, § 1. "[A]s a matter of Maryland law, the Baltimore City government does not wield enough control

over the Baltimore Police Department to be subject to liability for the Baltimore Police

Department's actions." *Chin*, 241 F. Supp. 2d at 549 (citing *Clea v. Mayor and City*

*Council of Baltimore*, 312 Md. 662 (1988)).

**B.     The Officers did not arrest the Plaintiff pursuant to a policy "fairly attributable" to the City.**

When the Officers arrested the Plaintiff, they did not further a policy "fairly

attributable" to the City. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987); *See*

*Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir.1999) ("plaintiffs seeking to

impose liability on a municipality must, therefore, adequately plead and prove the

existence of an official policy or custom that is fairly attributable to the municipality");

*see also Walker v. Prince George's Cnty., MD*, 575 F.3d 426, 431 (4th Cir. 2009) ("[A]

municipality's liability arises only where the constitutionally offensive actions of

employees are taken in furtherance of some municipal policy or custom.").

The BPD's relevant training and supervision policies are not "fairly attributable"

to the City. *Spell*, 824 F.2d at 1387; *See e.g. Hector v. Weglein*, 558 F. Supp. 194, 204

(D. Md. 1982) (granting summary judgment for the City on a § 1983 claim because

plaintiff's allegations were "based…on the alleged acts and/or omissions of the

Commissioner which are asserted to reflect City policy."). The Maryland General

Assembly granted the Police Commissioner final policymaking authority over the

Officers by granting him the power to supervise and direct the affairs and the operations

of the BPD. *See* PLL § 16-4 ("The affairs and operations of the [police] department shall

be supervised and directed by a commissioner of police, who shall function as the chief

police and executive officer of the department, and be known as the Police Commissioner of Baltimore City."); *see also Pembaur v. Cincinnati*, 475 U. S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("Authority to make municipal policy may be granted directly by a legislative enactment...").

The General Assembly's express delegation of final policymaking powers to the Police Commissioner in PLL § 16-7(8) includes the authority to "conduct, training, discipline and procedure for all members of the Department" which encompasses "the nature and existence of probable cause, on the constitutional limitations on investigative stops, detentions, searches and seizures, and on the Laws of Maryland." **Compl. ¶88**; *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (relying on "valid local ordinances and regulations" for descriptions of the duties and obligations of putative policymakers).

The City's "functions under relevant state law" are limited to the authority to appoint and remove the Police Commissioner, which is granted to the Mayor in PLL § 16-5(a). *McMillian* 520 U.S. at 786 (The "actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."); *See Clark*, 404 Md. at 28 (noting that Baltimore City Police is a distinct state agency "notwithstanding the Mayor's role in appointing and removing the City's Police Commissioner").[2] "[T]he Police Commissioner remains an employee and

---

[2] "[T]he General Assembly amended the PUBLIC LOCAL LAWS OF BALTIMORE CITY, effective June 1, 2009, to provide that a Police Commissioner may be removed from office 'at the pleasure of the Mayor.' Laws of 2005 Ch. 39 and Ch. 40. The Appointment,

agent of the State of Maryland even though the Mayor of Baltimore appoints the Police

Commissioner and the City Council confirms." *Id.* at 35.

The Mayor's authority under PLL § 16-5(a) is more limited than, for example, St.

Mary's County's power over the St. Mary's County Sheriff and his deputies who "are

state officials when acting in their law enforcement capacities." *Rossignol v. Voorhaar*,

321 F. Supp. 2d 642, 651 (D. Md. 2004). St. Mary's County's ability "to provide for the

appointment of county police and to prescribe their duties and fix their compensation"

under Md. Ann. Code Art. 25 § 3(q) "does nothing to change the County's basic

impotence to 'directly abridge the functions and duties of a sheriff under the common law

and enactments of the General Assembly.'" *Id.*; (quoting *Rucker v. Harford County*, 316

Md. 275, 288 (1989)).

The appointment and removal power granted to the Mayor in PLL § 16-5(a) does

not make the Police Commissioner's training and supervision policies "fairly

attributable" to the City. *Spell*, 824 F.2d at 1387; *See Brown*, 2011 U.S. Dist. LEXIS

147219, at *14, 2011 WL 6415366, at *5 (ruling that the City does not exert sufficient

control over the BPD to be subject to liability for its actions); *see also Robinson v. Balog*,

160 F.3d 183, 190 (4th Cir. 1998) ("the power to choose whom to hire, promote,

discharge, and transfer …simply cannot establish that he had the broader authority to

craft municipal policy"). As the court in *Clark supra.* explained, "[W]hile the Department

may be located in Baltimore City and the Mayor and City Council have an interest in

---

term, and qualifications of the Police Commissioner of Baltimore City are prescribed by
§ 16- 5 (a)." *Clark v. O'Malley*, 434 Md. 171, 177 (2013).

what public policy should be with respect to that Department, it is the considered opinion

of the General Assembly…that is dispositive..." *Clark*, 404 Md. at 36; *See Rausch v.*

*Allstate Ins. Co.*, 388 Md. 690, 715 n. 13 (2005) ("It is, after all, the General Assembly

that sets the public policy of the State").

Despite the City's interest in the performance of the BPD and its officers, the

limits of the City's actual "functions under relevant state law" are expressed in PLL § 16-

5(a) and in CITY CHARTER ART. II, §27. *McMillian* 520 U.S. at 786. This "federal court

would not be justified in assuming that municipal policymaking authority lies somewhere

other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. The

applicable law, PLL § 16-7(8), grants final policymaking authority for the training and

supervision of police officers to the Police Commissioner. *See e.g. Spell*, 824 F.2d at

1387-88 (police chief is the final policymaker with respect to police training).  By

contrast, CITY CHARTER ART. II, §27 deprives the City of final policymaking authority

for purposes of § 1983 liability for the Officers' actions. *See e.g. Bradley*, 887 F. Supp.

2d at 648 (finding that "the complaint inadequately alleges facts to allow the conclusion

that the City Defendants should be held liable under *Monell* and its progeny for any

policy or custom that can fairly be described as the moving force behind the claimed

constitutional deprivations.").

Cases which have erroneously put final policymaking authority on the City, when

the applicable law of the State of Maryland expressly places that authority on the Police

Commissioner, and not on the City, have conflated the analysis of whether the Police

Commissioner holds Eleventh Amendment immunity under § 1983 with whether the City

is liable under *Monell* for the police officers' actions. *See e.g. Hector*, 558 F. Supp. at 199

(precluding the use of state sovereign immunity to shield the Commissioner from liability

under § 1983). Alternatively, these cases find that no constitutional violation occurred.

*See e.g. Wiley v. Mayor of Baltimore*, 48 F.3d 773, 776 (4th Cir. Md. 1995) (holding that

no constitutional violation occurred by requiring police officers to undergo polygraph

examinations).

"[T]he strong practical links between the City and the Department," cited in *Wiley*,

48 F.3d at 776, and the City's purported "practical knowledge of and control over the

Police Department" do not justify and are wholly insufficient to impose final

policymaking authority on the City where the Maryland General Assembly has expressly

placed it on the Police Commissioner and deprived the City of any role in the training and

supervision of police officers. *Mason v. Mayor & City Council of Balt.*, Case No. HAR-

95-0041, 1995 U.S. Dist. LEXIS 4443, * 10, 1995 WL 168037, at *4 (D. Md. 1995).

C.   **The complaint fails to show that City policies of deficient training and supervision of the Officers deprived the Plaintiff of her constitutional rights.**

1.   THE PLAINTIFF FAILS TO IDENTIFY A DEFICIENT CITY POLICY.

The complaint offers unsupported conclusory assertions that the City "developed

and maintained ordinances, policies, practices and/or customs exhibiting deliberate

indifference to the…Plaintiff's constitutional rights." **Compl. ¶87**; *See Nemet Chevrolet,*

*Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (A court need not

accept a claimant's "legal conclusions, elements of a cause of action, and bare assertions

devoid of further factual enhancement."). In the Fourth Circuit, "§ 1983 complaints

which on critical elements of a claim merely recite legal conclusions wholly devoid of facts, may properly be dismissed for insufficiency of statement." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 875 (4th Cir.1989) (citations omitted).

With regard to the Officers' training and supervision, the Plaintiff fails to "identify a municipal 'policy' or 'custom' that caused [her] injury." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (A policy or custom can arise through a failure to properly train officers.); *see also Spell*, 824 F.2d at 1389 (To prevail under a *Monell* claim, a plaintiff must: (1) identify the specific policy or custom at issue; (2) fairly attribute the policy and fault for its creation to the municipality; and (3) prove an affirmative link between the identified policy or custom and the specific violation.).

The complaint fails to allege facts showing a City policy of deficient training. *See e.g. Walker*, 575 F.3d at 431 (affirming district court conclusion that "appellants failed to make any allegations in their complaint in regards to the existence of the County's policy, custom, or practice, therefore failing to plead a viable *Monell* claim"); *Chin*, 241 F.Supp.2d at 549-50 (dismissing the plaintiff's claim by finding that the plaintiff had failed to allege sufficient facts to establish a custom or policy to deny the plaintiff's constitutional rights). "[A] plaintiff must point to a specific deficiency and not a general ineffectiveness of the training." *Semple*, 195 F.3d at 713.

The complaint's allegation that the "City failed to adequately and properly supervise and train its police officers in various respects of law enforcement procedure, including but not limited to, the nature and existence of probable cause, on the

11

constitutional limitations on investigative stops, detentions, searches and seizures, and on

the Laws of Maryland," does not identify the specific deficiency in the training received

by the Officers that was the moving force behind the alleged deprivation of the Plaintiff's

rights. **Compl. ¶88;** *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) ("municipal

liability will attach only for [decisions] having a specific deficiency or deficiencies"); *see*

*e.g. Bradley*, 887 F. Supp. 2d at 648 (finding "the complaint inadequately alleges facts to

allow the conclusion that the City Defendants should be held liable under *Monell* and its

progeny for any policy or custom that can fairly be described as the moving force behind

the claimed constitutional deprivations."); *see also Iqbal*, 556 U.S. at 679 ("An inference

of a mere possibility of misconduct is not sufficient to support a plausible claim."). "[A]

municipality's culpability for a deprivation of rights is at its most tenuous where a claim

turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d

417 (2011).

   The complaint cannot allege a causal connection between the alleged failure to

train the Officers and the Plaintiff's injuries without identifying the specific deficiency in

the Officers' training. *See e.g. L.L. v. Balt. City Police Dep't*, 2013 U.S. Dist. LEXIS

61675, * 7 (D. Md. Apr. 30, 2013) ("bare allegations that the Department failed to

properly train the officers whose actions were an implementation of Department custom

are conclusionary and insufficient to state a claim.").The failure to allege the specific

deficiency in the training provided to the Officers deprives the court of the ability to

determine whether the purportedly deficient training is closely related to the Plaintiff's

injury. A claim for failure to train requires that "the identified deficiency…be closely

related to the ultimate injury." *Canton*, 489 U.S. at 391; *See Id.* at 390 ("[t]hat a particular

officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city,

for the officer's shortcomings may have resulted from factors other than a faulty training

program."). "[T]he focus must be on adequacy of the training program in relation to the

tasks the particular officers must perform." *Id.*

A court cannot infer from the single arrest on June 2, 2012, alleged in the

complaint, that a City policy or a custom caused the constitutional violation alleged by

the Plaintiff. **Compl. ¶¶ 8-30**; *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105

S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (A single act of the type here alleged cannot suffice,

standing alone, to establish the existence of such a policy.); *see also Spell*, 824 F.2d at

1391 (concluding proof of a single constitutional violation by police officers fails to

support an inference of a "municipal policy of deficient training" or "a condoned custom

of comparable practices"); *Pleasants v. Town of Louisa*, 847 F. Supp. 2d 864, 884 (W.D.

Va. 2012) ("one isolated incident insufficient to make out a failure to train claim under

§ 1983"). The City is not liable for "isolated incidents of unconstitutional conduct..."

*Lytle*, 326 F.3d at 473. "[T]here must be numerous particular instances of

unconstitutional conduct in order to establish a custom or practice." *Id.*

### 2.   THE COMPLAINT FAILS TO ALLEGE FACTS DEMONSTRATING A POLICY OF DELIBERATE INDIFFERENCE.

The violations of the Plaintiff's rights during the arrest, which allegedly arose

from the Officers' inadequate training, fail to show deliberate indifference. **Compl. ¶¶**

**8-30**. The City's alleged failure "to instruct its law enforcement officers in the proper use

of restraints in a police van" does not amount to "deliberate indifference" with respect to "the rights of persons with whom the police come into contact." **Compl. ¶89;** *Canton,* 489 U.S. at 388-89. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick,* 131 S.Ct. at 1360.

The complaint's conclusory allegations are insufficient to show deliberate indifference to state a claim for deficient training. **Compl. ¶ 90;** *See Iqbal,* 129 S. Ct. at 1949 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410. This standard "is only met if Plaintiff pleads facts such that the Court may draw a reasonable inference that (1) the County has actual or constructive notice of a deficiency in its training program that causes its employees to violate citizens' constitutional rights and (2) that despite this knowledge, it has chosen to retain that system." *McDonnell v. Hewitt-Angleberger,* 2012 U.S. Dist. LEXIS 54948, *10 (D. Md. Apr. 19, 2012) (three police brutality incidents over a two and half year period insufficient to put municipality on constructive notice of a training deficiency). There are no allegations in the complaint showing that the City had actual or constructive knowledge of a police officer training program deficiency that caused the deprivation of the Plaintiff's rights as alleged in the complaint. "Without notice that a course of training is deficient in a particular respect…, decisionmakers can

hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 131 S.Ct. at 1360.

### 3.   THE COMPLAINT FAILS TO ALLEGE FACTS SHOWING SUPERVISORY LIABILITY UNDER § 1983.

The complaint also fails to plead the elements to establish supervisory liability under § 1983. **Compl. ¶ 88.** The plaintiff must allege facts showing "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "[A] supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). A supervisor "may not prevent all illegal acts by his subordinates." *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). Only when the supervisor is "on notice of a subordinate's tendency to act outside the law," is he "obligated…to take steps to prevent such activity." *Id.* There are no facts alleged in the complaint concerning the knowledge of the Officers' supervisors.

The complaint fails to allege a "pervasive and unreasonable risk of harm," which can only be shown when "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 799. In addition, the complaint fails to allege that the Officers' supervisor's "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged

offensive practices." *Id.* The complaint fails to show any facts establishing "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* Lastly, the complaint does not allege how the training and the supervising of the Officers "proximately caused the deprivation of…[the Plaintiff's] rights," where the City is prohibited from exercising any training or supervisory authority over the BPD and its officers. *Semple*, 195 F.3d at 712.

**CONCLUSION**

Count VII of the complaint fails to state a claim against the City for the Officers' actions on June 2, 2012, because the City is prohibited by State law from exercising final policymaking authority over the training and supervision of the Officers. The City's lack of final policymaking authority over the BPD and the Officers is the public policy of the State of Maryland with which the Court of Appeals will not interfere. *See Clark*, 404 Md. at 36 ("It is well settled that, where the General Assembly has announced public policy, the Court will decline to enter the public policy debate..."). Any links, knowledge or control over the BPD that might be imputed to the City cannot establish *Monell* type liability on the City under § 1983.

The complaint fails to allege the specific deficiency in the Officers' training that amounted to deliberate indifference and caused the Plaintiff's injury. No facts are alleged in the complaint concerning the knowledge of the Officers' supervisors.

Defendant the Mayor and City Council of Baltimore requests that the motion to dismiss the complaint be granted, judgment be entered in its favor and the complaint be dismissed with prejudice.

Respectfully submitted,

STEVEN J. POTTER, Bar # 08841
Department of Law
100 Holliday Street
City Hall, Lower Level Room 05
Baltimore, Maryland 21202
(410) 396-3945
Fax (410) 547-1025
Steven.potter@baltimorecity.gov
Attorney for Defendant
Mayor & City Council of Baltimore

<u>Certificate of Service</u>

I hereby certify that the service of the foregoing document as required by Fed. R.

Civ. P. 5(a) has been made by electronic filing through the ECF system.

Steven J. Potter